IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN M. MOORE, | : |
| | : |
| Petitioner | : CIVIL NO. 4:CV-03-2168 |
| | : |
| v. | : (Judge Jones) |
| | : |
| SCOTT DODRILL., | : |
| | : |
| Respondent | : |

### **ORDER**

### **December 8, 2005**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Petitioner, Jonathan M. Moore ("Petitioner"), an inmate presently confined at the McCreary United States Penitentiary, in Pine Knot, Kentucky, initiated this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("the Petition"). The required filing fee has been paid. The named respondent is the USP-Lewisburg Warden, Scott Dodrill, the warden of Petitioner's place of confinement at the time he filed this action. Petitioner challenges his federal conviction for "use and carry" of a firearm, on the ground that he his actually innocent of the crime. (Rec. Doc. 1). A response and

traverse having been filed, the Petition is ripe for disposition.[1]  For the reasons that follow, the Petition will be denied.

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On September 15, 1992, Petitioner was indicted by a federal grand jury in the Northern District of Ohio.  (Rec. Doc. 26, Ex. 1).  He was charged with three counts of bank robbery, in violation of 18 U.S.C. § 2113 and three counts of using and carrying a firearm, in violation of 18 U.S.C. § 924(c). (Rec. Doc. 26, Ex. 1).  On October 29, 1992, a superseding indictment was returned, naming Petitioner's son, Michael, as an additional defendant.  (Rec. Doc. 26, Ex. 2).  Trial was scheduled for January 26, 1993.  Petitioner failed to appear for trial and the District Court issued a warrant for his arrest.  On March 19, 1993, Petitioner was arrested and held without bond.

---

[1] The government initially moved to dismiss the Petition for lack of jurisdiction, arguing that Moore cannot challenge his federal conviction and sentence through a § 2241 petition.  By Order dated November 19, 2004, the Court rejected the government's argument, finding that the § 2241 petition had been properly filed and transferred the action to the United States District Court for the Northern District of Ohio.  (Rec. Doc. 17).  By Order dated December 7, 2004, the District Court for the Northern District of Ohio refused jurisdiction and transferred the action back to the United States District Court for the Middle District of Pennsylvania pursuant to Braden v. 30th Judicial Circuit Ct. of Kentucky, 410 U.S. 484, 494-95 (1973)("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.").

On April 14, 1993, Petitioner was indicted again, for two additional armed bank robberies, in violation of 18 U.S.C. § 2113, two additional counts of using and carrying a firearm, in violation of 18 U.S.C. § 924(c) and one count of failing to appear for trial, in violation of 18 U.S.C. § 3146(a)(1).  (Rec. Doc. 26, Ex. 3).

On December 21, 1993, Petitioner was charged in an information with escape, in violation of 18 U.S.C. § 751(a), for attempting to escape from the Cuyahoga County Jail on May 23, 1993.  (Rec. Doc. 26, Ex. 4).

Petitioner's trial commenced on December 7, 1993.  (Rec. Doc. 26, Ex. 5). Opening arguments were made and the government commenced its case-in-chief. Evidence was presented, and seven witnesses testified, with respect to counts one and two of the September 15, 1992 indictment, concerning the bank robbery and petitioner's use and carrying of a firearm.  On the second day of trial, Petitioner withdrew his plea of not guilty and entered a plea of guilty in accordance with a signed plea agreement.  (Rec. Doc. 26, Ex. 6).

On December 8, 1993, Petitioner entered a guilty plea to three counts of armed bank robbery, in violation of 18 U.S.C. § 2113, one count of using and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), one count of failure to appear for trial, in violation of 18 U.S.C. § 3146(a), and one count of escape, a

3

violation of 18 U.S.C. § 751.  (Rec. Doc. 26, Ex. 7).  The government agreed to dismiss the two remaining counts of bank robbery and four remaining counts of use and carrying a firearm.

On December 22, 1993, Petitioner was sentenced to a concurrent 235 month term of imprisonment on the bank robbery, escape and failure to appear charges and a consecutive 60 month term of imprisonment for the use and carrying a firearm charge, for a total sentence of 295 months..  (Doc. 26, Ex. 8).

On January 7, 1994, Petitioner filed a Notice of Appeal, which was subsequently withdrawn in October, 1994, in order to allow Petitioner to file a motion to set aside his conviction, pursuant to 28 U.S.C. § 2255.  The trial court denied Petitioner relief on his motion to set aside his conviction.  Petitioner filed an appeal to the United States Court of Appeals for the Sixth Circuit, arguing that trial counsel rendered ineffective assistance. (Rec. Doc. 26, Ex. 9).  On November 17, 1995, the Court of Appeals affirmed the District Court, finding that counsel properly investigated Petitioner's case and that the District Court properly accepted Petitioner's guilty plea in light of counsel's pre-trial investigation and Petitioner's testimony regarding his involvement in the bank robberies.  (Rec. Doc. 26. Ex. 9); Moore v. United States, 70 F.3d 1272, 1995 WL 693313 (6th Cir. 1995).

On December 1, 2003, Petitioner filed the instant Petition in which he challenges

his conviction for using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). (Rec. Doc. 1). Specifically, Petitioner claims that he is entitled to relief under the §2255 savings clause on the basis that, under the Supreme Court's decision in <u>Bailey v. United States</u>, 516 U.S. 137 (1995), decided after the decision on Petitioner's initial §2255 motion, the evidence is insufficient to show that he "actually employed a firearm" for purposes of a §924(c)(1) conviction. <u>Id</u>. By Order dated November 19, 2004, this Court determined that Petitioner may pursue his claim in the form of a §2241 petition. (Rec. Doc. 17).

## **DISCUSSION**

In <u>Bailey</u>, the United States Supreme Court clarified the meaning of the term "use" under § 924(c)(1). In particular, the Supreme Court held that " §924(c)(1) requires evidence sufficient to show an <u>active</u> <u>employment</u> of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." <u>Bailey</u>, 516 U.S. at 142. The Supreme Court held that the term "use" must entail more than mere possession of a firearm by a person who commits a drug offense, rather, the prosecution must show active employment of the firearm. <u>See</u> <u>id</u>. at 148. To illustrate the activities that fall within the definition of "use," the Supreme Court held that brandishing, displaying, bartering, striking with, and firing or attempting to fire a firearm are included

5

in the term "use." See id.   Also, an offender's reference to a firearm in his possession calculated to bring about a change in the circumstances, as well as the silent but obvious and forceful presence of a gun on a table can be a "use" under § 924(c)(1). See id. However, mere storage of a weapon near drugs or drug proceeds is not "use" under §924(c)(1). Moreover, when an offender conceals a gun nearby to be at the ready for an imminent confrontation it is not a "use" if the gun is not disclosed or mentioned by the offender.

With this standard in mind, this Court will now look at the record to determine whether the activities of the Petitioner as set forth in Count 2 constitute "use" under § 924(c). In Count 2, Petitioner was charged with using and carrying a firearm during and in relation to the armed bank robbery of the Home Savings and Loan in August, 1991. The testimony presented on the first day of trial consisted of three witnesses who testified about the armed robbery and the robber's use and carrying of a firearm.

The first witness was Robert Steele, the bank administrator of Home Savings and loan.   In answering questions concerning the gun used during the robbery, Mr. Steele testified as follows:

> Q    Mr. Steele, tell us about the gun.  What did you see about it; what did you see him do with it?

> A    Well, the first time I noticed it obviously was as soon as I walked in the door. And I'm not by any means an expert. It was just a small black gun, small revolver type gun, and pretty much that's all I saw.
>
> Q    Did you see the gun again after the initial?
>
> A    All the time he carried it around with him and when he wanted us to do something or me something, it wasn't with his empty hand. It was with the gun hand. It was always do this, do that with the gun.
>
> Q    And in addition to pointing the gun at you did you say that there were verbal threats?
>
> A    Only the one to me personally. Only one time when I reached for my desk drawer to get the combination out, he did say don't do – he cautioned me. He said I'll shoot if you activate any alarm or anything like that.

(Rec. Doc. 26, Ex. 5, N.T., 12/7/93, at pp. 40-41).

Tara Piecuch, head teller on the day of robbery, was the second witness to testify:

> Q    Did you see the bank robber's gun at this time?
>
> A    We always, he was always waiving it around. We saw it always. It was never a concealed weapon, no. It was always in his hand.

(Doc. 26, Ex. 5, N.T., 12/7/93, at pp. 56-57). She also described how the robber pointed the revolver at another teller's chest and "kept drilling her. (Doc. 26, Ex. 5, N.T., 12/7/93, at p. 54). Finally, she testified that she was close enough to the gun to describe it as a

7

"blue gray steel" revolver with "a silver sort of emblem" on the handle.  (Doc. 26, Ex. 5, N.T., 12/7/93, at pp. 61-62).

The third bank employee, Audrey Fairman, testified that on the day of the bank robbery she was confronted by the robber when she arrived at work and opened the door to the bank:

> Q    Okay, and does he have anything in his hands?
>
> A    Oh yeah.  He had a gun.  And he's pointing it at me and telling me to get in here, get in here.  And he's like hollering at me.  And I was like frozen.  I just couldn't move up those couple steps.  And finally he like was at the end of the door and like sort of reached and grabbed me like, you know, and at that time grandpa could have really closed the door on me.
>
> Q    The robber stepped out of the doorway?
>
> A    He was on the cement block like the platform right behind the door there.
>
> Q    He grabbed you by your shoulder?
>
> A    By the shoulder, yeah.
>
> Q    And was – that was his gun hand or other hand?
>
> A    No, the other hand because he had the gun in the right.
>
> Q    So, after he grabbed you what happened then?
>
> A    Of course, we went in.  And there's a hallway.  The door shut

>   and the hallway right there by the men's bathroom. He put the gun in my mid drift pushing it at me because he's holding at me because did I use the phone. And no, I didn't use the phone. I have no phone. And why didn't I use the key. And why didn't I knock on the door, and just firing questions at me and threatening to kill me if I used the phone.
>
>   .....
>
>   Q    You talk about the gun in your midrift. Could you feel it?
>
>   A    Oh, I did. In fact, I had marks on my blouse from where he was pushing. My husband seen afterwards there was actual marks on my blouse.
>
>   Q    Where the gun –
>
>   A    – actually was pushing on me, yes.
>
>   Q    Did you feel was it metal?
>
>   A    Oh, yes.

(Doc. 26, Ex. 5, N.T., 12/7/93, at pp. 61-69)

In confirming the testimony given on the first day of trial, Petitioner testified to the following at his guilty plea hearing:

>   THE COURT:    All right. Now, Mr. Moore, let me take you to August 24th, 1991, at the Home Savings and Loan. We heard some testimony here yesterday concerning what you are alleged to have done, but we did not hear the testimony that indicated that as yet that you – well, let me strike that. We heard the testimony concerning the activities of that day.

|            |            |
|------------|------------|
|            | The testimony that was given yesterday; is that correct?<br>(conferring with his counsel) |
| THE COURT: | I want to know whether you robbed the bank; it's that simple. Did you? |
| DEFENDANT: | Guilty |
| THE COURT: | Well, tell me what you did.  Maybe that's the easier way to do it. |
| DEFENDANT: | Can I speak to Attorney Gain for one second? |
|            | (conferring with counsel) |
| DEFENDANT: | Your honor, |
| THE COURT: | Yes. |
| DEFENDANT: | Your Honor, whatever, the witnesses said yesterday is true. |
| THE COURT: | And it was you who was the man in the bank? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Did you have a firearm with you? |
| DEFENDANT: | Yes. |

(Doc. 26, Ex. 7, N.T., 12/8/93, at pp. 28-29).

The foregoing testimony established "use" under §924(c)(1). We accordingly find that the activities of the Petitioner as set forth in Count 2, and as supported by the trial

10

transcript, constitute "use" under Bailey v. United States, 516 U.S. 137 (1995). Given the witnesses' testimony, undisputed by the Petitioner, it is absurd for him to argue otherwise. Accordingly, we will deny the Petition.

**NOW, THEREFORE IT IS HEREBY ORDERED THAT:**

1. The Petition (doc. 1) is DENIED.

2. Petitioner's motion for leave to supplement his petition with claims pursuant to Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005) is DENIED.[2]

3. Petitioner's motion for writ of mandamus (doc. 31) is DISMISSED as moot.

4. The Clerk of Court is directed to CLOSE this case.

                                      s/ John E. Jones III
                                      John E. Jones III
                                      United States District Judge

---

[2] Recently, the Court of Appeals for the Third Circuit held that the Blakely / Booker decisions do not have retroactive effect. See Lloyd v. United States, 407 F.3d 608, 2005 WL 1155220 (3d Cir. May 17, 2005); see also Oriakhi v. United States, Civ. No. 3:CV-04-36, slip op. at p. 3 (M.D.Pa. March 3, 2005) (Vanaskie, C.J.) (the Supreme Court has not directed that Blakely can be retroactively applied to cases on collateral review). Since Blakely /Booker cannot presently be applied retroactively to cases on collateral review, this Court is precluded from considering the claims raised in Moore's motion to supplement his petition. See United States v. Pinkston, 153 F.Supp.2d 557 (M.D.Pa.2001).